UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| SAVANNAH KAY RICHERT, | ) | |
|---|---|---|
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | NO. 1:17-CV-3 |
| | ) | REEVES/LEE |
| GLOBAL PERSONNEL | ) | |
| SOLUTIONS, INC., | ) | |
| | ) | |
| *Defendant*. | ) | |

## MEMORANDUM OPINION

In November 2016, Savannah Kay Richert filed this sexual harassment action in state court against Global Personnel Solutions, Inc. ("GPS"), bringing claims for a hostile work environment and constructive discharge under the Tennessee Human Rights Act (THRA).[1] On January 5, 2017, the suit was timely removed to this Court based on diversity jurisdiction. Richert filed an amended complaint approximately one month later [D. 19].

On February 26, 2018, GPS filed a motion for summary judgment [D. 38], which is now before the Court. Richert responded [D. 41], and GPS replied [D. 33]. For the following reasons, GPS's motion for summary judgment will be granted, and this action will be dismissed.

**I.  LEGAL STANDARD**

Summary judgment is proper only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute is genuine if a reasonable jury could return a verdict in favor of the nonmoving

---

[1] The complaint was originally filed against Duracell Manufacturing, Inc., as well, but Duracell was dismissed from this case in November 2017, per the parties' stipulation [D. 36].

party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.*

The moving party bears the initial burden of showing that there is no genuine issue of material fact on any element of the other party's claim or defense. *Stiles ex rel. D.S. v. Grainger Cty.*, 819 F.3d 834, 847 (6th Cir. 2016). In determining whether this burden is satisfied, the Court must consider "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," in the light most favorable to the nonmovant, drawing all justifiable inferences in that party's favor. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Adams v. Metiva*, 31 F.3d 375, 378-79 (6th Cir. 1994). But, as the Supreme Court has noted, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Murray v. Harriman City*, 2010 WL 546590, at *3 (E.D. Tenn. Feb. 10, 2010) (quoting *Scott v. Harris,* 550 U.S. 372, 380 (2007)).

Once the movant has satisfied its initial burden, the other party must show that a genuine issue of material fact still exists. *Stiles*, 819 F.3d at 847. In doing so, the non-moving party may not rely on the pleadings alone, but must instead point to "specific facts" in the record that create a genuine issue for trial. *Metiva*, 31 F.3d at 378-79.

In ruling on a motion for summary judgment, the Court's function is limited to determining "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. The Court need not scour the record "to establish that it is bereft of a genuine issue of fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). But the Court does not weigh evidence, judge witnesses' credibility, or decide the truth of the matter, and any genuine disputes of

fact that do exist must be resolved in favor of the nonmovant. *Anderson*, 477 U.S. at 249; *Tolan v. Cotton*, 134 S. Ct. 1861, 1863 (2014).

## II. RELEVANT FACTS

GPS submitted a statement of material facts in support of its motion for summary judgment [D. 40], to which Richert responded [D. 42]. Of the 39 factual statements, 31 were undisputed; four were undisputed, but subject to clarification; and four were disputed in part. For purposes of ruling on GPS's motion for summary judgment, any genuine disputes of fact will be construed in Richert's favor. With that in mind, the relevant facts are as follows.

In November 2015, Richert was hired by GPS, a staffing company that provides temporary employees to two Duracell Manufacturing facilities in Cleveland, Tennessee: a battery manufacturing plant on Mouse Creek Road ("Mouse Creek") and a packing plant on Old Tasso Road ("Tasso"). Richert was assigned to work at Tasso. Due to high noise levels at the facility, Richert asked to be moved to a different working area. Her request was granted, but it did not solve the problem; the Tasso plant was "loud all over." Richert did not complain to anyone in management about the noise specifically, but after one month, she requested a transfer. Soon after, Richert was transferred to Mouse Creek [D. 41, at 2].

At some point thereafter, Richert was subjected to what she believed to be sexually harassing behavior from Randy Butcher, a Duracell employee who worked on the second shift with her once every three weeks [D. 38-1, at 80]. The duration of the harassment is unclear, due in large part to Richert's own inconsistent statements. For instance, in her response to GPS's motion for summary judgment, Richert says that she worked at Duracell "without incident from December 2015 until March 2016," and that the harassing comments were made "on or about March 15, 2016." [D. 41, at 2]. This timeline is also reflected in the complaint and incident investigation

3

forms that Richert submitted to GPS on March 16, in which she stated that the harassment occurred between March 7 and 11, and on March 15 [*see* D. 38-1, at 80, 81]. However, in her deposition, Richert states that the harassment began in January, and that the dates that she wrote on the complaint forms are inaccurate [D. 38-1, at 43]. And in her amended complaint, Richert says that she was subject to sexually inappropriate advances "throughout her employment" [D. 19, at 4].

In light of these conflicting statements, it is unclear how long the alleged harassment actually occurred. Although Richert herself has caused this confusion, it is not for the Court to decide the truth of the matter. Thus, for purposes of ruling on GPS's motion for summary judgment, the Court will construe the facts leniently and in Richert's favor, and will adopt the longest timeline of approximately three months.

In any case, it is undisputed that Richert first *reported* the harassment on March 16, 2016. On that date, Richert submitted a complaint form to GPS management, detailing the harassment that she experienced:

> Butcher told me that he loves my jeans several times. He told me that he loves to watch me bend over a palletizer. He will always watch me when I'm in zone 3, same zone as him. I have caught him several times looking at me while I was bent over. Amber Simpson has also heard Butcher say he thought I was on a dance pedestal so he was going to stand there and watch me.

[*Id.*]. Richert testified in her deposition that Butcher would make multiple comments to her in a day [*Id.* at 35]. He also stared at her when he walked by, although he never touched her [*Id.* at 3].

GPS promptly opened an investigation into the allegations. During the course of the investigation, GPS personnel interviewed Richert on numerous occasions and spoke with Amber Simpson, the only witness that Richert had identified. After filing her complaint, Richert saw Butcher at work on only one occasion, and a Duracell supervisor sent him home.

4

Following the investigation, GPS explained to Richert that because Butcher was a Duracell employee, GPS was powerless to fire him or transfer him to another facility. GPS then offered Richert three possible solutions: she could (1) speak to Duracell directly; (2) transfer to a different shift at Mouse Creek; or (3) transfer back to Tasso. Richert agrees that these are the only options that GPS could offer. But she also says that because Butcher was on a rotating shift at Mouse Creek, transferring to Tasso was the only way she could completely avoid working with him.

Even so, Richert did not initially select this option. Instead, she texted Wren Walker, Director of Operations for GPS, to ask about other job openings at Mouse Creek. The two had the following text exchange:

> RICHERT: I was just woundering [sic] if there was any other jobs here at mouse creek that I could do either in metals or consoles or cap and nail. I really like it excel [sic] the shift that's working with me now and they are only on this part of the factory
>
> WALKER: Not that I know of… But I can check and let you know tomorrow.
>
> RICHERT: Please do. I need a job but I can't go to Tasso
>
> WALKER: Why?
>
> RICHERT: People are so unfriendly.
>
> WALKER: Savannah… [you] really need to give it another try… That is a much better job… pays more money… and there are way more opportunities over there.
>
> RICHERT: What [are] the openings there?

[D. 38-1, at 83-85 (ellipses in original)]. Walker then informed Richert of the available positions at Tasso, to which Richert replied, "I will take any of the jobs." [*Id.*]. The two agreed that Richert would take a position as a "palletizer,"[2] which was, as Richert put it, "a completely different thing

---

[2] In this position, Richert would operate a machine that stacked boxes of batteries onto pallets.

5

than what [she] had done before at Tasso." [*Id.* at 54]. Walker granted the transfer request, and Richert thanked Walker three times for her help.

But then, without warning or explanation, Richert failed to report to work the next day. As she later explained, "I didn't want to go back there…. [My fiancé] knew how miserable I was from before, and so he said … just don't show up and quit and look for another job. So that's when I never showed back up." [*Id.* at 55]. A week or two later, Richert sent Walker a text stating, "I'm not going to be able to make [it] into work the next two days[,] sorry for the inconvenience but [I] have to take care of some personal things." [*Id.* at 88]. Richert never appeared for work again, and so, on April 11, 2016, GPS terminated her employment as a "voluntary quit." [D. 38-2, at 2].

Richert filed this action in November 2016, bringing claims for hostile work environment and constructive discharge under the Tennessee Human Rights Act, and seeking compensatory damages in an amount to be determined at trial and $1,000,000 in punitive damages. She says that GPS should not have put her in a position where she had to choose between working with her harasser or transferring to an "unendurable work environment." [D. 19, at 6].

On February 26, 2018, GPS moved for summary judgment [D. 38]. Richert responded [D. 41], and GPS replied [D. 43]. The motion is now ripe for the Court's consideration.

### III. DISCUSSION

In its motion for summary judgment, GPS makes three primary arguments against Richert's suit. First, GPS states that the conduct about which Richert complains is insufficiently severe or pervasive to constitute an objectively hostile work environment under the THRA. Second, even if Richert could establish that she experienced a hostile work environment, GPS says that it took

6

prompt and appropriate remedial action in response to her complaint. Third, GPS says that Richert's constructive-discharge claim fails because she has not shown or even alleged that GPS deliberately attempted to compel her to resignation. The Court will address each argument in turn.

### A. Hostile Work Environment

To prevail on a hostile-work-environment claim based on sexual harassment by a coworker, the plaintiff must prove the following elements:

> (1) she is a member of a protected class; (2) she was subject to unwelcome sexual harassment; (3) the harassment was based on her sex; (4) the harassment unreasonably interfered with her work performance and created a hostile work environment; and (5) [the employer] knew or should have known of the charged sexual harassment and failed to implement prompt and appropriate corrective action.

*Mullins v. Goodyear Tire & Rubber Co.*, 291 F. App'x 744, 746 (6th Cir. 2008) (citation omitted) (alteration in original).[3] Only the fourth and fifth elements are at issue in this case.

#### 1. *The work environment was not objectively hostile*

A hostile work environment occurs "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 463 (6th Cir. 2000) (*quoting Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21 (1993)). The plaintiff must show that the work environment was both subjectively and objectively hostile. *Id.* In this case, the subjective prong is undisputed. But GPS says that the conduct alleged is insufficient as a matter of law under the objective test.

---

[3] "The analysis of claims brought pursuant to the THRA is identical to the analysis used for Title VII claims." *Chattman v. Toho Tenax Am., Inc.*, 686 F.3d 339, 346 (6th Cir. 2012) (*quoting Bailey v. USF Holland, Inc.*, 526 F.3d 880, 885 n.1 (6th Cir. 2008)). Accordingly, caselaw interpreting either statute is instructive in this case.

In determining whether the harassment was objectively severe or pervasive, a court is to consider "the totality of the circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it was physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfered with an employee's performance.'" *Smith v. Rock-Tenn Servs., Inc.*, 813 F.3d 298, 309 (6th Cir. 2016) (citation omitted) (cleaned up). "While there is no bright line rule as to what constitutes a hostile work environment, the plaintiff's allegations must depict conduct that could be construed as pervasive enough to alter the conditions of her employment and to create an abusive situation." *Clark v. United Parcel Serv., Inc.*, 400 F.3d 341, 351 (6th Cir. 2005). The Supreme Court has made clear that conduct must be "extreme" to amount to a change in the terms and conditions of employment, and that "the sporadic use of abusive language, gender-related jokes, and occasional teasing" does not meet this standard. *Ault v. Oberlin Coll.*, 620 F. App'x 395, 400 (6th Cir. 2015) (*discussing Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)). *See also Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 333 (6th Cir. 2008) ("Conduct that is merely offensive is not actionable."). The Sixth Circuit has also noted that "harassment involving an 'element of physical invasion' is more severe than harassing comments alone." *Hawkins*, 517 F.3d at 334.

Applying these principles, the Court finds that the conduct of which Richert complained, though unprofessional and offensive, was not sufficiently severe or pervasive to sustain a hostile-work-environment claim against GPS. Butcher made only a handful of comments to Plaintiff over a period of, at most, three months. And although Butcher may have repeated his comments several times in one day, the remarks themselves were not severe or physically threatening in nature, and there is no evidence that they unreasonably interfered with Richert's work performance. *See Grace v. USCAR*, 521 F.3d 655, 679 (6th Cir. 2008) (noting that "the occasional comments, which may

have been 'offensive utterances,' do not rise to the level required by the Supreme Court's definition of a hostile work environment"); *Robinson v. Carefocus, Inc.*, 2011 WL 2672037, at *7 (E.D. Tenn. July 8, 2011) (Collier, C.J.) ("Isolated offhand remarks regarding Plaintiff's body do not rise to the level of severe or pervasive to constitute actionable sexual harassment.").

In her response to GPS's motion for summary judgment, Richert says that "a jury could reasonably conclude that Randy Butcher's comments … go beyond mere offensive utterances rising to humiliating conduct." [D. 41, at 5]. Richert does not cite to a single case for this assertion, perhaps because the caselaw does not support it. In fact, the Sixth Circuit has declined to find a hostile work environment in cases involving far more egregious allegations. For instance, in *Stacy v. Shoney's, Inc.*, the Sixth Circuit found that a hostile work environment was not shown where, over the course of two months, "a male supervisor continuously made sexually suggestive comments about the female plaintiff's appearance, touched her breast as he removed and replaced a pen from her shirt pocket, leered at her, and told her that if he had someone like her, he would never let her leave the house." *Clark v. United Parcel Serv., Inc.*, 400 F.3d 341, 352 (6th Cir. 2005) (*discussing Stacy v. Shoney's, Inc.,* 1998 WL 165139, at *1-3 (6th Cir. 1998)).

In addition to the remarks, Richert also says that Butcher stared at her. But even assuming that the stares were lecherous in nature, creepy glances from a coworker are insufficient to alter the terms or conditions of one's employment. *See Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1248 (11th Cir. 1999) (noting that "although 'following and staring' can betray romantic or sexual attraction, the everyday observation of fellow employees in the workplace is also a natural and unavoidable occurrence when people work together in close quarters").

None of this is to say that the alleged harassment in this case was trivial. To the contrary, such conduct is clearly inappropriate and must not be tolerated as a matter of policy. But as a

matter of *law*, the Court finds that Richert has not alleged conduct severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive. For this reason, GPS is entitled to summary judgment as to Richert's hostile-work-environment claim.

### 2. *GPS implemented prompt and appropriate corrective action*

Even if Richert could establish that Butcher's conduct created an objectively hostile work environment, she must also show that GPS both "(1) knew or should have known of the harassment and (2) failed to take prompt and appropriate corrective action." *EEOC v. Harbert-Yeargin, Inc.*, 266 F.3d 498, 518 (6th Cir. 2001). It is undisputed that GPS knew of the harassment in this case. But GPS says that it is entitled to summary judgment because its response to Richert's complaint was more than adequate.

In cases involving allegations of coworker harassment, employer liability is direct rather than derivative, and depends on the employer's own acts or omissions. *Mullins v. Goodyear Tire & Rubber Co.*, 291 F. App'x 744, 750 (6th Cir. 2008). Thus, an employer may be liable only if its *response* to coworker sexual harassment "manifests indifference or unreasonableness in light of the facts the employer knew or should have known." *Id.* (*quoting Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 340 (6th Cir. 2008)). "The appropriate corrective response will vary according to the severity and persistence of the alleged harassment." *West v. Tyson Foods, Inc.*, 374 F. App'x 624, 633 (6th Cir. 2010).

A response is generally adequate if it is "reasonably calculated to end the harassment." *Smith v. Rock-Tenn Servs., Inc.*, 813 F.3d 298, 311 (6th Cir. 2016) (*quoting Waldo v. Consumers Energy Co.,* 726 F.3d 802, 814 (6th Cir. 2013)). Examples of reasonably appropriate corrective actions include "promptly initiating an investigation to determine the factual basis for the complaint, 'speaking with the specific individuals identified by the complainant, following up with the

complainant regarding whether the harassment was continuing, and reporting the harassment to others in management.'" *Waldo*, 726 F.3d at 814 (citations omitted) (cleaned up). Unless there is evidence of continued harassment, the employer need not physically separate the perpetrator from the victim. *Mullins v. Goodyear Tire & Rubber Co.*, 291 F. App'x 744, 749 (6th Cir. 2008)

Richert says that GPS's response was inadequate because GPS "did not change [her] work schedule to get her away from her harasser." [D. 41, at 7]. But "[t]he issue is not whether plaintiff finds the response by defendant satisfactory but whether defendant's response was appropriate." *Mullins*, 291 F. App'x at 749 (*quoting Martin v. Boeing-Oak Ridge Co.*, 244 F.Supp.2d 863, 875 (E.D. Tenn. 2002) (Jordan, J.)). *See also Anderson v. Memphis City Sch. Bd. of Educ.*, 75 F. Supp. 2d 786, 796 (W.D. Tenn. 1999) ("[A] plaintiff will not prevail simply because the remedy offered by defendant was not what plaintiff wanted."). And in this case, GPS responded appropriately. Immediately after receiving Richert's complaint, GPS initiated an investigation in accordance with its written anti-harassment policy, which was given to Richert upon hiring [*see* D. 38-1, at 73]. During the course of this investigation, GPS spoke with everyone who had first-hand knowledge of the incidents, and interviewed Richert on numerous occasions.

Additionally, it is undisputed that after Richert filed her complaint, she never worked directly with Butcher again [D. 38-1, at 60-61]. On the one occasion that Richert saw him on the premises, he was quickly sent home. Richert points out that the supervisor who sent Butcher away worked for Duracell, not GPS. But this distinction is not dispositive. First, GPS did not have the authority to fire, transfer, or alter the work schedule of *any* Duracell employees, including Butcher.[4] Second, there is no evidence that the harassment continued, or would have continued had Richert continued to work with Butcher after bringing her concerns to GPS's attention. As the

---

[4] Richert admits that she does not know whether GPS management ever spoke to anyone at Duracell about changing Butcher's employment [D. 38-1, at 57].

Sixth Circuit stated in *Mullins v. Goodyear Tire & Rubber Co.*, "absent evidence of continued sexual harassment, we are unwilling to impose liability on the employer for failing to keep the harasser and the plaintiff separated." 291 F. App'x at 744 (cleaned up).

Ultimately, GPS offered Richert three remedial solutions to address her problem. Richert says that she does not know what else GPS could have done or offered her, only that it "did not feel right." [*Id.* at 59]. Still, she selected from the options provided and willingly agreed to transfer to Tasso. The fact that she quickly regretted this decision does not render GPS's response to her complaint—or the remedial options offered—inadequate or inappropriate.

Viewing the evidence in the light most favorable to Richert, a reasonable jury could not conclude that GPS reacted with "indifference or unreasonableness" toward Richert's complaint of coworker sexual harassment. To the contrary, GPS's response to Richert's complaint was reasonably calculated to end the harassment and apparently succeeded in doing so, at least for the duration of Richert's employment. Thus, Richert's hostile-work-environment claim must be dismissed.

### B. Constructive Discharge

Richert also alleges that she was constructively discharged because GPS "knowingly transferred her to an unendurable work environment [from] which she [had] previously requested relief." [D. 19, at 6]. Constructive discharge exists when working conditions are so intolerable that "a reasonable person would have been compelled to resign," and the plaintiff actually resigns. *Gosbin v. Jefferson Cty. Commissioners*, 2018 WL 1037402, at *8 (6th Cir. Feb. 23, 2018). To prove this claim, the plaintiff must establish that "(1) the employer *deliberately* created *intolerable* working conditions, as perceived by a reasonable person; and (2) the employer did so with the *intention* of forcing the employee to quit." *Id.* (*quoting Logan v. Denny's, Inc.*, 259 F.3d 558, 568-69 (6th Cir. 2001)) (emphasis added). Richert's claim fails on both prongs.

First, the Court has already determined that Richert was not subject to a hostile work environment, and thus, she cannot show that a reasonable employee in her situation would have felt compelled to resign. For this reason alone, GPS is entitled to summary judgment on Richert's constructive-discharge claim. *See, e.g.*, *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 462 (6th Cir. 2000) (dismissing a claim for constructive discharge because the plaintiff's hostile-work-environment claim failed). Additionally, there is no evidence that the noise levels at Tasso made working there "unendurable," or that GPS deliberately created those conditions.

As to the second prong, there is simply no evidence in the record to indicate that GPS acted with the intention of forcing Richert's resignation, and, critically, Richert does not even allege as much. In fact, the evidence shows that GPS attempted to accommodate Richert's preferences in order to retain her; Richert expressly accepted reassignment back to Tasso; and then, shortly thereafter, Richert voluntarily decided not to return to work. Richert was not "forced to quit" by GPS's actions. She just quit, plain and simple. Accordingly, GPS is entitled to summary judgment on Richert's constructive-discharge claim.

## IV.  CONCLUSION

Based on the foregoing, GPS's motion for summary judgment [D. 38] is **GRANTED**, and this case is **DISMISSED**.

**IT IS SO ORDERED.**

_____
**UNITED STATES DISTRICT JUDGE**